# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

————————————

Nº 07-CV-3256 (JFB) (AYS)

————————————

## ROBERT HOUSTON,

Plaintiff,

VERSUS

## THOMAS COTTER, JOHN WEISS, AND THE COUNTY OF SUFFOLK,

Defendants.

————————————

**MEMORANDUM AND ORDER**
February 14, 2017

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Robert Houston ("plaintiff") brought this action against defendants Thomas Cotter ("Officer Cotter"), John Weiss ("Officer Weiss"), and the County of Suffolk ("the County") (collectively, "defendants") pursuant to 42 U.S.C. § 1983 ("Section 1983"). Plaintiff commenced suit on July 26, 2007 by filing a *pro se* complaint against Officers Cotter and Weiss[1] alleging that they used excessive force against him on January 11, 2007. (ECF No. 1.) Counsel from the law firm Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") were subsequently designated to represent plaintiff (ECF No. 51),[2] and plaintiff filed an amended complaint on December 16, 2011 (ECF No. 68) that added a Due Process claim against the County for implementing a policy whereby corrections officers confined plaintiff to suicide watch for two weeks as punishment.

This case was tried before a jury from February 23, 2015 to March 9, 2015. On March 9, 2015, the jury returned a verdict in plaintiff's favor as to (1) his excessive force claim against Officer Cotter, awarding $1,000 in compensatory damages and $4,000 in punitive damages; and (2) his Due Process claim against the County, awarding $25,000 in compensatory damages. (ECF No. 165.) The jury found that Officer Weiss was not liable on the excessive force claim. (*Id.*)

Presently before the Court is plaintiff's motion for attorneys' fees and costs. (ECF No. 181.) Plaintiff requests an award of $89,281.93 in fees and costs against Officer

---

[1] In his original complaint, plaintiff also sued three other officers, but voluntarily withdrew those claims after retaining counsel and filing an amended pleading.

[2] *See* 28 U.S.C. § 1915(e)(1).

Cotter and $883,726.77 in fees and costs against the County. For the reasons set forth below, the Court awards plaintiff $7,500 in attorneys' fees against Officer Cotter ($1.00 of which is to be satisfied from the jury award) and $338,979.55 in attorneys' fees against the County, for a total of $346,479.55. The Court further awards plaintiff $23,856.57 in costs against Officer Cotter and $56,235.33 in costs against the County, for a total of $80,091.90.

## I. BACKGROUND

### A. Facts

The Court has set forth the background facts of this case in the March 27, 2014 Memorandum and Order denying the parties' cross-motions for summary judgment, *see Houston v. Cotter*, 7 F. Supp. 3d 283, 287-89 (E.D.N.Y. 2014), and the March 30, 2016 Memorandum and Order denying defendants' post-trial motion for judgment as a matter of law, *Houston v. Cotter*, No. 07-CV-3256 (JFB) (AYS), 2016 WL 1253391, at *2-10 (E.D.N.Y. Mar. 30, 2016). Accordingly, the Court does not repeat those facts here and instead discusses all relevant facts in conjunction with its analysis of each issue raised by the instant motion.

### B. Procedural History

Plaintiff filed his *pro se* complaint in this case on July 26, 2007 alleging Section 1983 excessive force claims against Officers Cotter and Weiss, as well as against Officers Douglas Gubitosi, Arthur Thomas, and Gerard Reynolds. (ECF No. 1.) After several years of discovery, Cleary Gottlieb was designated as counsel to plaintiff in December 2010. (ECF No. 51.) Thereafter, the Court granted plaintiff's motion to re-open discovery (ECF No. 58), and on December 16, 2011, plaintiff filed an amended complaint asserting excessive force claims against Officers Cotter and Weiss and a Due Process claim against the County (ECF No. 68).

Defendants moved to dismiss the complaint on January 20, 2012 (ECF No. 70), and after the Court denied that motion on August 10, 2012 (ECF No. 79), defendants and plaintiff cross-moved for summary judgment on July 26, 2013 and September 6, 2013, respectively (ECF Nos. 111, 113). The Court denied the cross-motions on March 27, 2014 (ECF No. 125), and the case proceeded to eight days of trial from February 23, 2015 through March 9, 2015 (*see* ECF Nos. 147-63).

On March 9, 2015, the jury reached a verdict and found for plaintiff as to (1) his excessive force claim against Officer Cotter, awarding $1,000 in compensatory damages and $4,000 in punitive damages; and (2) his Due Process claim against the County, awarding $25,000 in compensatory damages. (ECF No. 165.) The jury also concluded that Officer Weiss was not liable on the excessive force claim. (*Id.*) On March 15, 2015, defendants moved to set aside the verdict only with respect to the Due Process claim against the County on the ground that the jury's determination was against the weight of evidence. (ECF No. 166.) The Court denied that motion on March 30, 2016. (ECF No. 177.)

Plaintiff subsequently filed the instant motion for recovery of attorneys' fees and costs on April 26, 2016. (ECF No. 181.) Defendants submitted their opposition on June 24, 2016 (ECF No. 187), and plaintiff submitted his reply on July 22, 2016 (ECF No. 188). The Court held oral argument on September 6, 2016 and requested supplemental letters from the parties. (ECF No. 190.) Plaintiff submitted his letter on September 20, 2016 (ECF No. 191), and defendants filed their letter on October 4,

2016 (ECF No. 192). The Court has fully considered all of the parties' submissions.

## II. Discussion

Plaintiff requests an award of attorneys' fees and costs against Officer Cotter in the amount of $89,281.93 and attorneys' fees and costs against the County in the amount of $883,726.77.[3] Defendants do not dispute that plaintiff's calculation of $7,500 is a reasonable award of attorneys' fees against Officer Cotter pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Defs.' Br., ECF No. 187-1, at 20.) However, defendants do contest the reasonability of plaintiff's request for $81,781.93 in costs with respect to Officer Cotter and $677,959.10 in fees and $205,767.67 in costs with respect to the County. Specifically, defendants contend that (1) plaintiff achieved limited success in this action; (2) plaintiff's requested fees with respect to the County are unreasonable; (3) plaintiff failed to adequately document his costs with respect to both defendants; and (4) plaintiff should in no event recover more than $50,000 in total fees and costs.

For the following reasons, the Court awards plaintiff $346,479.55 in attorneys' fees and $80,091.90 in costs.

## A. Applicable Law

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, 42 U.S.C. § 1988(b) ("Section 1988") provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984) ("[I]n federal civil rights actions 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" (quoting 42 U.S.C. § 1988)).

Generally, to determine reasonable attorneys' fees, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue* 559 U.S. at 542). "'[T]he lodestar figure includes

---

[3] Plaintiff originally sought $906,867.42 in attorneys' fees and costs against the County, but subsequently reduced the requested attorneys' fees after applying a fifty percent cut to time entries reflecting attorney travel. (*See* Pl.'s Reply Br., ECF No. 188, at 10 n.17; Suppl. Decl. of Victor L. Hou ("Suppl. Hou Decl."), ECF No. 189.)

most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433).

In addition, the Supreme Court has recognized that "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440; *see also Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (citing *Hensley*, 461 U.S. at 434-35). In *Hensley*, the Court held that:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. at 440; *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004).

The Supreme Court further explained that, in cases where a plaintiff pursues "distinctly different claims for relief that are based on different facts and legal theories" (even though brought against the same defendants), "counsel's work on one claim will be unrelated to his work on another claim" and thus, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 434-35. However, "[a] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *see also Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 n.6 (2d Cir. 2000) ("The district court therefore has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or are based on related legal theories." (alteration omitted)).

B. Success

As a threshold matter, defendants argue that "[t]he total award of $30,000 to the plaintiff in this litigation represents such an insignificant degree of success that only a minimal amount of fees should be awarded." (Defs.' Br. at 7.) Although they acknowledge that plaintiff was the "prevailing party" in this Section 1983 action for purposes of Section 1988 (*id.*), defendants rely on *Hensley*, 461 U.S. at 436, to argue that plaintiff only achieved "partial or limited success," and *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), to contend that "[i]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." *Farrar* held that

4

"[a]lthough the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988," *id*. at 114, and in a concurring opinion, Justice O'Conner wrote that "[w]hen the plaintiff's success is purely technical or *de minimis*, no fees can be awarded," *id*. at 117 (O'Conner, J., concurring).

The Court disagrees with defendants' characterization of plaintiff's victory in this case. First, rather than a nominal sum, the $30,000 in compensatory and punitive damages awarded by the jury was substantial and easily distinguishable from the cases cited by defendants. *See Carroll v. Blinken*, 105 F.3d 79, 81-82 (2d Cir. 1997) (affirming district court's reduction of requested attorneys' fees because, *inter alia*, "[t]here was no damage award"); *Pino v. Locascio*, 101 F.3d 235, 238-39 (2d Cir. 1996) (holding that district court erred in awarding attorneys' fees in civil rights action where plaintiff only recovered $1 in nominal damages). In *Pino*, the Second Circuit specifically noted that *Farrar*'s inquiry applies "whe[re] the plaintiff has won only *nominal* damages." 101 F.3d at 238 (emphasis added) (citing *Farrar*, 506 U.S. at 103). Thus, *Farrar* and its progeny are inapposite here because plaintiff did not obtain *de minimis* or technical relief, but instead an actual and considerable monetary award.[4] *Cf., e.g.*, *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) ("We are unpersuaded by Defendants' attempts to characterize the $10,000 settlement in this case as meager. Moreover, the success here was hardly technical.").

Second, insofar as defendants assert that plaintiff achieved only "limited or partial success" because the jury did not find liability as to Officer Weiss (*see* Defs.' Br. at 6), that argument fails because plaintiff's successful excessive force claim against Officer Cotter and unsuccessful excessive force claim against Officer Weiss "involve[d] a common core of facts or [were] based on related legal theories . . . ." *Green*, 361 F.3d at 98; *see also Kerin*, 218 F.3d at 194; *Monette v. Cty. of Nassau*, No. 11-CV-539 (JFB) (AKT), 2016 WL 4145798, at *9 (E.D.N.Y. Aug. 4, 2016) (holding that although "plaintiff's claims for disability discrimination and hostile work environment were rejected by the jury and plaintiff only prevailed on his First Amendment retaliation claim," no reduction in requested fees was warranted on partial success grounds because "the issue of plaintiff's transfer was inextricably intertwined with his retaliation claim"). Accordingly, because this "lawsuit consist[ed] of related claims" and plaintiff "won substantial relief," he "should not have his attorney's fee reduced simply because the [jury] did not adopt each contention raised."[5] *Hensley*, 461 U.S. at 440. *Cf. Barfield v. New*

---

[4] Moreover, the Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *see also Millea*, 658 F.3d at 169 ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel.").

[5] Moreover, there is no merit to any argument that plaintiff achieved only "partial success" in this action because he volitionally chose not to assert claims against Officers Gubitosi, Reynolds, and Thomas in the amended complaint. (Defs.' Br. at 22.) "[W]hile the voluntary dismissal or withdrawal of *inflated* claims may justify a fee reduction, the same will not be true of claims pursued in good faith, but later withdrawn for valid reasons, such as the discovery of additional evidence." *Green*, 361 F.3d at 100; *see also Morgenstern v. Cty. of Nassau*, No. CV 04-58 (ARL), 2009 WL 5103158, at *10 (E.D.N.Y. Dec. 15, 2009) ("The court will not, however, deduct from the award

*York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (affirming reduction of requested attorneys' fees because plaintiff failed to achieve primary aim of certifying class action).

Finally, to the extent that defendants argue that a fee reduction is warranted because the jury award was substantially less than what plaintiff sought, the Court disagrees. In determining the prevailing party's degree of success, a court must consider "'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint . . . ." *Id*. (quoting *Carroll*, 105 F.3d at 81). Here, however, plaintiff's amended complaint—the operative pleading in this action—did not seek a specific sum, but rather requested "[a]n award to Plaintiff of compensatory damages against all Defendants, jointly and severally, resulting from Defendants' unlawful conduct, the precise amount to be supplied to the Court upon a trial on the merits . . . ." (Am. Compl. at 16.) At trial, plaintiff's counsel also did not ask for an exact award from the jury; instead, he said during summations that "[t]he law requires [plaintiff] to ask for money damages, but you can give him as little or as much as you think is necessary . . . ." (Trial Tr. 1267:3-5, ECF No. 166-8.) Thus, there is no baseline comparison in this case between the damages plaintiff sought and the damages the jury actually awarded, and defendants' reliance on *Toussie v. County of Suffolk*, No. 01-CV-6716 (JS) (ARL), 2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012), is therefore misplaced. In that case, the court declined to award fees because,

*inter alia*, "[t]he jury awarded Toussie only $12,500–a mere third of a percent of what he submitted to the jury," which totaled approximately $35.8 million. *Id*. at *4.

Nevertheless, defendants argue that the Court should use the parties' settlement negotiations as a touchstone. They aver that "[p]laintiff's award of $30,000 represents a recovery of a mere 2% of the 'actual damages' he was seeking during the pendency of this action and at trial" (Defs.' Br. at 7), and that "on September 18, 2012 the plaintiff presented a demand to settle the claim in the amount of $1.5 million dollars" (*id*. at 5; *see also* Decl. of Brian Mitchell Ex. C, ECF No. 187-4.). However, defendants offer no authority for the proposition that a court may consider a prior settlement offer as a relevant comparator for determining the prevailing party's degree of success, and the Second Circuit has held that a "district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded." *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992); *see also Siracuse v. Program for the Dev. of Human Potential*, No. 07 CV 2205 CLP, 2012 WL 1624291, at *20 (E.D.N.Y. Apr. 30, 2012) (holding that "defendant has failed to provide any support for the novel argument that plaintiff should be denied fees because, in defendant's view, plaintiff's counsel acted unreasonably in failing to accept defendant's settlement offer," and that consideration of settlement discussions on a motion for attorneys' fees is barred by Federal Rule of Evidence 408); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 542

---

the amounts incurred for legal services rendered in connection with the breach of contract, civil service law, or human rights law claims that were voluntarily dismissed . . . [because] [t]he court agrees with the plaintiff that the work done in relation to those claims contributed to the ultimate success of the lawsuit . . . . (citing *Grant v. Martinez*, 973 F.2d 96,

99 (2d Cir. 1992) (holding that the relevant inquiry is not "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures"))). There is nothing in the record that indicates that plaintiff's voluntarily dismissed claims were inflated or specious.

(S.D.N.Y. 2008) ("Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled earlier and still obtained a substantial recovery at that time."). Accordingly, the Court will not consider any settlement offer made by plaintiff in assessing the reasonableness of his request for attorneys' fees.[6]

In sum, the Court declines to award plaintiff no fees or impose a fee reduction based on limited success at trial because (1) the compensatory and punitive damages were substantial rather than nominal; (2) plaintiff's unsuccessful excessive force claim was factually intertwined with his successful excessive force claim; and (3) plaintiff did not request a specific monetary award in his amended complaint or at trial.

## C.  Reasonable Hourly Rates

The Court proceeds to calculate the lodestar for the attorneys' fees pertaining to plaintiff's Due Process Claim against the County[7] by determining reasonable hourly rates and hours expended. Because defendants do not dispute the hourly rates propounded by plaintiff, the Court will only brief address that prong of the lodestar analysis.

"The reasonable hourly rate is the rate a paying client would be willing to pay."

*Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "Fees should not be awarded at higher out-of-district rates unless 'a reasonable client would have selected out-of-district counsel because doing so would likely . . . produce a substantially better net result.'" *Id.* (quoting *Simmons*, 575 F.3d at 172). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989). *See* 522 F.3d at 190.

> The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the

---

[6] In any event, even if the Court considered those discussions, it would not alter the Court's view regarding plaintiff's degree of success in this lawsuit.

[7] As noted *surpa*, defendants do not dispute that $7,500 is an appropriate measure of attorneys' fees under the PLRA with respect to plaintiff's excessive force claim against Officer Cotter. The Court has independently reviewed plaintiff's calculations and determined that that sum, which by law is capped at 150 percent of plaintiff's $5,000 jury award, is reasonable. *See Shepherd v. Goord*, 662 F.3d 603, 607 (2d Cir. 2011) (holding that under the PLRA, "no

attorney's fee award greater than 150 percent of the monetary judgment may be entered against a defendant" (citing 42 U.S.C. § 1997e(d)(2))). Pursuant to 42 U.S.C. § 1997e(d)(2), the Court applies a nominal offset of $1.00 to be collected from the judgment. *See, e.g., Hernandez v. Goord*, No. 01-CV-9585 SHS, 2014 WL 4058662, at *13 (S.D.N.Y. Aug. 14, 2014) (holding that under 42 U.S.C. § 1997e(d)(2), "[a] district court may apply less than 25 percent of the judgment (as long as it applies *some* portion of the judgment) to satisfy the attorney's fee award" (quoting *Parker v. Conway*, 581 F.3d 198, 205 (3d Cir. 2009))).

circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19). Finally, a district court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298 (citations omitted).

"Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates." (citations omitted)). Of course, in light of the

numerous factors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse*, 2012 WL 1624291, at *30.

Here, plaintiff requests an hourly rate of $400 for Clearly Gottlieb partner Victor L. Hou; $225 for senior and mid-level associates Christopher P. DeNicola, Matthew C. Vogele, and Laura A. Zuckerwise; and $175 for junior associates Andrew M. Darcy, Stewart C. Dearing, Christopher P. DeNicola, Sarah E. Edwards, Tracy L. Edwards, Diarra M. Guthrie, Benjamin L. Leffler, and Laura A. Zuckerwise.[8] Upon review of the declaration and exhibits in support of plaintiff's motion for attorneys' fees and costs (*see* Hou Decl. and accompanying exhibits), and upon consideration of the *Johnson* factors and the prevailing local hourly rates discussed above, the Court finds that these uncontested rates are reasonable and will use them to calculate the lodestar for plaintiff's Due Process claim against the County.[9]

D. Reasonable Hours

Defendants argue that the number of hours expended by plaintiff's counsel in litigating this action were "not reasonably spent" and "far exceed[ed] the minimum that was necessary to effectively litigate the case . . . ." (Defs.' Br. at 21.) Specifically, they assert that the Court should "deduct any hours billed that reflect excessive and duplicative charges," and that "[t]here are multiple instances where the several

---

[8] Several attorneys are listed as both junior and senior/mid-level associates because they advanced in class rank over the course of this litigation. (*See* Decl. of Victor L. Hou ("Hou Decl."), ECF No. 183, at 25-26.)

[9] Plaintiff has not requested fees for work performed by paralegals, law clerks, and summer associates. (Pl.'s Br., ECF No. 182, at 11.)

attorneys billed for interactions vaguely described as 'conversation' 'communication' or 'e-mails' with each other or the 'team', rather than actual work on the claims . . . ." (*Id.* at 21-22.) In addition, defendants contend that there are "a number of instances in the records provided where work that has been previously billed for a certain task is preformed [sic] again by the same or a different associate." (*Id.* at 22.) Accordingly, defendants "submit that a 50% across the board reduction is proper" for the total hours worked by Clearly Gottlieb.[10] (*Id.* at 23.)

Plaintiff counters that the time entries and other records provided are sufficiently detailed; that Clearly Gottlieb appropriately staffed this case; and that no duplicative work was performed. (Pl.'s Reply Br., ECF No. 188, at 6-9.) For the reasons set forth below, the Court agrees with defendants that the hours expended by plaintiff's counsel are unreasonably excessive and will adopt a 50 percent across-the-board cut before calculating the lodestar.

1. Legal Principles

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done."

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Hensley*, 461 U.S. at 434; *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." 757 F.3d 31, 64 (2d Cir. 2014) (citation omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding 15 percent across-the-board reduction); *Kirsch*, 148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

In addition, a district court has discretion to reduce requested attorneys' fees where the prevailing party assigned an inordinate number of attorneys to litigate the action. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (holding, in a Title VII case, that "it was within the purview of the court's discretion to determine whether or not the

---

[10] In addition to asking the Court to reduce the total hours expended by half because of "vague, redundant and excessive billing," defendants contend that further reduction is warranted due to plaintiff's purported limited success and the "time spent on claims that have

been effectively shown to be baseless, such as those against defendants Thomas, Gubitosi and Reynolds . . . ." (*Id.* at 22.) For the reasons discussed *supra*, the Court finds that such reductions are unjustified.

actual time expended by an additional attorney was reasonable"). In *Luciano*, the Second Circuit cited approvingly *Stryker Corporation v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116 (E.D.N.Y.1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996), where the district court adopted a 25 percent reduction because

> it simply was not necessary for [counsel] to have five attorneys and several clerks attend the trial. Moreover, despite [counsel's] highly professional trial and witness exhibits, the Court believe[d] much of the exhibit preparation and pre-trial discovery, and other legal work, was duplicative. In addition, [counsel's] records for the trial time demonstrate[d] an aggregation of attorney time and tasks performed in certain matters.

*Id*. at 127. Similarly, in *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009), the Second Circuit affirmed a 25 percent cut "because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel."

Other district and appellate courts have also pared hours based on overstaffing. *See, e.g.*, *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (holding that "where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time"), *accord Luciano*, 109 F.3d at 117; *Mazzei v. Money Store*, No. O1CV5694 (JGK) (RLE), 2015 WL 2129675, at *4 (S.D.N.Y. May 6, 2015) ("Although [counsel] drafted multiple letters and participated in multiple telephone conferences with the Court, these events alone cannot explain the inordinate number of hours contributed to standard letter motions, legal research, and supporting

memoranda, nor can it explain why three attorneys' time was necessary."); *Tucker v. City of N.Y.*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[U]sing multiple attorneys in a simple case, which this certainly was, poses the serious potential—fully realized in this instance—for duplication of work or overstaffing."); *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 CIV. 6441 LAKHBP, 2003 WL 21976400, at *4 (S.D.N.Y. Aug. 19, 2003), *aff'd sub nom. Auscape Int'l v. Nat. Geographic Soc'y*, No. 02 CIV. 6441 (LAK), 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003) ("I have reviewed each of the entries in the time records, and although I do not find that specific tasks were staffed in a redundant manner, I do find that the relatively large number of attorneys—six partners and associates plus the managing attorney—assigned to the specific, narrow discovery dispute in issue did, no doubt, give rise to inefficiencies."); *Nat'l Helicopter Corp. of Am. v. City of N.Y.*, No. 96 CIV. 3574 SS, 1999 WL 562031, at *7 (S.D.N.Y. July 30, 1999) (Sotomayor, J.) ("It is also apparent that this matter was staffed with more attorneys, at higher rates, than necessary and that in certain respects, these attorneys either duplicated each other's efforts or performed services unnecessary to this litigation."); *Kim v. Dial Serv. Int'l, Inc.*, No. 96 CIV. 3327 (DLC), 1997 WL 458783, at *19 (S.D.N.Y. Aug. 11, 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998) ("In addition, the lodestar should be reduced to reflect duplicative work by the two plaintiff's attorneys. Many of the entries show that both attorneys did the same work at the same time when only one attorney's time was necessary."); *Mendoza v. City of Rome*, 162 F.R.D. 260, 264 (N.D.N.Y. 1995) (reducing hours because it was unnecessary for two attorneys to attend examinations before trial and the trial).

For instance, in *ACE Ltd. v. CIGNA Corp.*, No. 00 CIV. 9423 (WK), 2001 WL

1286247 (S.D.N.Y. Oct. 22, 2001), counsel from Skadden, Arps, Slate, Meagher & Flom LLP sought attorneys' fees in connection with a motion to compel arbitration,[11] and the court reduced the requested sum by 50 percent after determining that the "nine attorneys and fourteen paraprofessionals [used] to litigate this matter . . . was excessive for this type of common motion involving straightforward issues." *Id.* at *3. The court observed that several associates staffed on the matter billed excessive hours for the types of tasks they were assigned, and that "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys . . . they may not foist their extravagances upon their unsuccessful adversaries." *Id*. at *4 (alteration in original) (quoting *King World Productions, Inc. v. Financial News Network*, *Inc.* 674 F. Supp. 438, 440 (S.D.N.Y. 1987)); *see also General Electric Co. v. Compagnie Euralair, S.A*., 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997) ("It is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases." (footnote omitted)); *Gillberg v. Shea*, 1996 WL 406682, at *5 (S.D.N.Y. May 31, 1996) ("Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable." (footnote omitted)).

In another case involving a large law firm, the Northern District of New York reduced the attorneys' fees requested by Gibson, Dunn & Crutcher LLP in a civil rights case after determining that, *inter alia*, "an excessive number of attorneys were present at trial," and that there was a "larger pattern of consistent overstaffing," including the "proliferation of intra-office conferences." *Pope v. Cty. of Albany*, No. 1:11-CV-0736 LEK/CFH, 2015 WL 5510944, at *13 (N.D.N.Y. Sept. 16, 2015). Likewise, in *Stevens v. Rite Aid Corp.*, No. 6:13-CV-783, 2016 WL 6652774, at *4 (N.D.N.Y. July 6, 2016), the "fee application contain[ed] billing entries for fifteen (15) different attorneys (partners and associates)" totaling "more than $560,000.00 in legal expenses [for] the prosecution of a civil action that took eight days to try and which . . . did not involve overly complex issues." The court imposed a 30 percent across-the-board cut because, *inter alia*, it found it "unreasonable to utilize multiple attorneys for routine tasks," and that "the sheer excessiveness of the time spent on all of the details of this case" was "problematic." *Id*. at *5-6. The court observed that "[l]aw firms generally operate with a profit motive where efficiency is the rule demanded in every case. These firms do not have the luxury to address every detail of a case *ad infinitum*." *Id*. at *6. Instead, to calculate the lodestar, courts must look to "'what a reasonable, paying client would be willing to pay,' given that such a party 'wishes to spend the minimum necessary to litigate the case effectively.'" *Id*. (quoting *Simmons*, 575 F.3d at 174).

Finally, the Second Circuit has said that calculating reasonable hours expended is "best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." *Carey,* 711 F.2d at 1146; *see also Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the district court, which is intimately familiar with the nuances of the case," is in the best position to determine an appropriate fees award). "In making this examination, the district court

---

[11] Although this was not a civil rights action implicating Section 1988, the court still applied the lodestar method to calculate the fees award. *Id*. at *2.

does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

2. Analysis

Plaintiff argues that its counsel at Cleary Gottlieb "reasonably expended 3,541.76[12] hours between October 15, 2011, when [p]laintiff's counsel considered adding a due process claim against Suffolk County, and July 30, 2015, when this Court heard oral argument on Suffolk County's motion for judgment as a matter of law." (Pl.'s Br. at 15.) In support of the motion, plaintiff submitted records delineating the amount of time Cleary Gottlieb attorneys expended on various phases of this litigation, which plaintiff divided into six tranches as summarized below:[13]

Phase I – Discovery on Excessive
Force Claim (December 2010 –
October 14, 2011)
**Total Hours**: 1,307

Phase II: Amended Complaint
(October 15, 2011 –
August 10, 2012)
**Total Hours**: 312.75

Phase III: Discovery on Due Process
Claim (August 11, 2012 –
June 27, 2013)
**Total Hours**: 1,067.25

Phase IV: Motions for Summary
Judgment (June 28, 2013 –
March 27, 2014)
**Total Hours**: 653.5

Phase V:[14] Trial (March 28, 2014 –
March 9, 2015)
*Excessive Force Claim*
**Total Hours**: 1,034.51

*Due Process Claim*
**Total Hours**: 1,034.51

Phase VI: Post-Verdict Motion for
JMOL (March 10, 2015 –
July 30, 2015)
**Total Hours**: 473.75

(Hou Decl. at 25-26; *see also* Hou Decl. Ex. B.)

The Court find the number of hours expended on this litigation to be unreasonably excessive. First, the matter was overstaffed. From the inception of Cleary Gottlieb's representation through the resolution of defendants' post-trial motion, plaintiff's counsel assigned 10 different attorneys to this case, who spent more than 3,500 hours litigating the Due Process claim against the County (not accounting for the 50 percent time cut for attorney travel), and more than 1,000 hours[15] on the trial phase

---

[12] This sum does not reflect the 50 percent cut for travel time voluntarily applied by plaintiff with respect to fees for the Due Process claim. (*See* Suppl. Hou Decl. at 3.)

[13] These values do not reflect the 50 percent travel time reduction. (*Compare* Hou Decl. at 25-26, *with* Suppl. Hou Decl. at 3.)

[14] Because plaintiff's counsel worked on both the excessive force and the Due Process claims during the trial phase, Cleary Gottlieb apportioned an identical number of hours to each. (Pl.'s Br. at 16 n.12.)

[15] Although the Court's analysis is limited to the Due Process claim because of the compensation cap imposed by the PLRA with respect to the excessive

alone. Further, as plaintiff acknowledged during oral argument, Cleary Gottlieb had four attorneys present during the trial, whereas defendants were represented by a single lawyer. The Court is cognizant that large law firms like Cleary Gottlieb experience attrition and accordingly need to replace attorneys who have departed, and that those firms also use pro bono matters such as the instant action to provide young associates with valuable experience—a worthwhile endeavor. Nevertheless, other courts have correctly found that large law firms cannot take advantage of fee-shifting schemes by running up the bill and "foist[ing] their extravagances upon their unsuccessful adversaries." *ACE Ltd.*, 2001 WL 1286247 at \*4; *see also Pope*, 2015 WL 5510944, at \*13; *Stevens*, 2016 WL 6652774, at \*4. Indeed, "[i]t is well recognized . . . that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases." *General Electric Co.*, 1997 WL 397627, at \*4.

Although, plaintiff relies on *Carey*, 711 F.2d at 1146, for the proposition that "prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist," this is not a case involving the attendance of one, two, or even three attorneys at discrete court proceedings. Here, four Cleary Gottlieb attorneys attended eight days of trial, and "courts . . . have generally frowned upon awarding fees to more than two attorneys for court appearances unless the case is uniquely complex." *Ng v. King Henry Realty, Inc.*, No. 16CIV0013PAEJCF, 2016 WL 6084074, at \*6 (S.D.N.Y. Oct. 7, 2016) (reducing hours because, "[g]iven the straightforward nature

of this case, the attendance of four and six attorneys at [court] hearings was clearly excessive"); *see also Robinson v. City of N.Y.*, No. 05 CIV. 9545 (GEL), 2009 WL 3109846, at \*8 (S.D.N.Y. Sept. 29, 2009) (Lynch, J.) (reducing hours because "there is no reason that four lawyers needed to be present at counsel table throughout the fourteen-day trial"). This Court presides over many Section 1983 actions as a matter of course, and it has routinely observed one or two attorneys vigorously and effectively litigate civil rights actions, even those involving complex legal and factual issues. *Cf. Yea Kim v. 167 Nail Plaza, Inc.*, No. 05CV8560GBDGWG, 2009 WL 77876, at \*5 (S.D.N.Y. Jan. 12, 2009) ("While *Carey* indicates that it may be appropriate to have a 'second' attorney on a matter, 711 F.2d at 1146, and some case law reflects awards for even more attorneys, no showing has been made as to the need for or role of each of the eight attorneys on this case. This Court routinely sees cases brought under the FLSA where a single attorney for plaintiffs handles the entire matter. The defendants here had a single attorney. The billing records suggest that as many as five of plaintiff's attorneys (and one paralegal) were in the courtroom for trial. Nothing in the plaintiff's application explains why plaintiff needed to have such a large number of attorneys.").

For instance, this Court heard a six-day Section 1983 trial in *Monette v. County of Nassau*, No. 11-CV-539 (JFB) (AKT) (E.D.N.Y.), where the plaintiff was ably represented by only two attorneys who secured a favorable verdict in a case comparable to the instant lawsuit in factual and legal scope. *See* 2016 WL 4145798, at \*1. Plaintiff's counsel spent 667 hours

---

force claim, *see supra* note 7, the Court notes that Cleary Gottlieb expended more than 2,000 hours on both claims during the trial phase. That staggering sum is approximately equivalent to what the average

large law firm expects each of its associates to bill in a single year. In this case, four Cleary Gottlieb attorneys accumulated those hours in less than a year.

litigating that action, as opposed to the over 3,000 hours expended in this case. *Id*. at *10. Likewise, in *Tatum v. City of N.Y.*, No. 06-CV-4290 PGG GWG, 2010 WL 334975, (S.D.N.Y. Jan. 28, 2010), two attorneys represented a Section 1983 plaintiff during three and one-half years of litigation and a five-day trial. *Id*. at *2. The jury awarded the plaintiff $1 million in damages based on a successful deliberate indifference claim against a corrections officer, and plaintiff's counsel sought $514,445 in attorney's fees. *Id*. The court held that while the plaintiff was "entitled to a substantial attorneys' fee award in light of the length and complexity of the litigation and the successful jury verdict, the requested amount [was] not reasonable," and it instead awarded $321,788.12. *Id*. at *2, 14.

Second, and relatedly, the Court does not find the Due Process claim to have involved such thorny and unusual legal issues to warrant so many attorneys. Plaintiff argues that "[t]he hours spent . . . were reasonable and necessary given the novelty and complexity of Mr. Houston's due process claim and the amount of work required to litigate it from the complaint through post-trial phases," and highlights Cleary Gottlieb's efforts to re-open discovery, conduct new discovery, file an amended complaint, litigate dispositive and post-trial motions, and conduct trial. (Pl.'s Br. at 16.) However, the Second Circuit observed in *Pino*, 101 F.3d at 239, that the "vast majority of civil rights litigation does not result in ground-breaking conclusions of law," and based on this Court's "own familiarity with the case and its experience generally" with Section 1983 litigation, *Gierlinger* 160 F.3d at 876, the Court finds that the Due Process claim in the instant action did not advance a "novel issue of law," *Pino*, 101 F.3d at 239. On the contrary, it was akin to other cases alleging unconstitutional municipal policies pertaining to incarceration. *See, e.g.*,

*Solomon v. Nassau Cty.*, 759 F. Supp. 2d 251, 263 (E.D.N.Y. 2011) (finding issues of fact on Due Process claim against county regarding penal policies).

Further, the more than 3,000 hours expended by Cleary Gottlieb on the Due Process claim and $677,959.10 in related fees requested by plaintiff are inconsistent with comparable litigation. At oral argument, the Court said that it was not aware of another civil case with a similar procedural history and length of trial that resulted in a commensurate fees award, and it asked both parties to submit supplemental letters. After reviewing those submissions and conducting its own survey, it is clear to the Court that plaintiff's request is anomalous. *Cf., e.g.*, *Husain v. Springer*, 579 F. App'x 3, 6 (2d Cir. 2014) (holding that plaintiffs' "attorney's claim of 2,741.4 hours of attorney time was extravagant" in a Section 1983 litigation that "established no new principle of law," but rather "concerned a 'straightforward' application of existing law, calling into question their attorney's enormous expenditure of time" (citing *DiFilippo*, 759 F.2d at 235-36 (vacating fee award and remanding for reduction where hours claimed were "facially excessive" in comparison to "the straightforward and non-novel nature of the [plaintiff's] case"))); *Anderson v. Cty. of Suffolk*, No. CV 09-1913 (GRB), 2016 WL 1444594, at *12 (E.D.N.Y. Apr. 11, 2016) (awarding approximately $313,000 in fees after two trials and an interim appeal); *Monette*, 2016 WL 4145798, at *11 (awarding $222,153.00 in attorneys' fees after six-day trial and approximately 667 hours expended); *Tatum*, 2010 WL 334975, at *2 (S.D.N.Y. Jan. 28, 2010); *Cruz v. Henry Modell & Co.*, No. CV 05-1450 (AKT), 2008 WL 905351, at *13 (E.D.N.Y. Mar. 31, 2008) (awarding $80,326.50 in attorneys' fees for civil rights case that resulted in a six-day trial); *cf. also Stevens*, 2016 WL 6652774, at *4 (despite $560,000 request, awarding

$393,445.55 for "the prosecution of a civil [discrimination] action that took eight days to try and which . . . did not involve overly complex issues"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251 JFB AKT, 2014 WL 1514235, at *17 (E.D.N.Y. Apr. 16, 2014) (awarding $83,447.50 in fees in discrimination case following trial); *Yea Kim*, 2009 WL 77876, at *5 (S.D.N.Y. Jan. 12, 2009) (after four-day wage claims trial, holding that the 1778.7 hours plaintiff sought "(after some laudable voluntary reductions by the plaintiff)" were excessive "[i]n light of the relative simplicity of this case and the shortness of the trial"); *Luca v. Cty. of Nassau*, No. 04-CV-4898 (FB), 2008 WL 2435569, at *8 (E.D.N.Y. June 16, 2008) (holding that counsel reasonably expended 618.9 hours on discrimination litigation that "spanned more than three years and ha[d] been vigorously defended at every stage; it resulted in a motion for summary judgment, a motion for reconsideration, a six-day trial and a two-day evidentiary hearing on front pay"), *aff'd in part, vacated in part, and remanded*, 344 F. App'x 637 (2d Cir. 2009); *Petrovits v. New York City Transit Auth.*, 2004 WL 42258, at *6 (S.D.N.Y. Jan. 7, 2004) (awarding $215,550.00 in fees for employment discrimination case involving a summary judgment motion and a six-day jury trial).

Several of the cases that plaintiff cites in his supplemental authority letter are distinguishable on their facts. (*See* ECF No. 191.) *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 188 (S.D.N.Y. 2001), *aff'd*, 48 F. App'x 363 (2d Cir. 2002), and *Selzer v. Berkowitz*, 477 F. Supp. 686, 688 (E.D.N.Y. 1979), involved three-week and nine-week trials, respectively. The litigation in *Konits v. Valley Stream Central High School District*,

No. CV 01-6763 (LDW), 2010 WL 2076949, at *1 (E.D.N.Y. May 19, 2010), *aff'd sub nom. Konits v. Karahalis*, 409 F. App'x 418 (2d Cir. 2011), spanned over a decade and included an interim appeal resulting in reversal of a summary judgment order and remand for trial. Finally, *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999), involved "a series of novel and difficult questions concerning the scope and character of the procedural protections of the Due Process Clause of the Fourteenth Amendment." As previously discussed, the instant action does not present issues of analogous complexity.[16]

Third, the Court concludes that a reduction in hours is appropriate based on vague and block-billed time entries. The Court has reviewed plaintiff's submissions and noted repeated use of block-billing such that the reasonableness of each entry cannot be as easily determined. For instance, there are numerous inscrutable entries that mention "[c]ommunications regarding records and status" or "[r]eview communications" (*see, e.g.*, Hou Decl. Ex. B at 7-8; 74-75); "Houston team mtg." (*see, e.g., id.* at 58); "trial prep" (*see, e.g., id.* at 57, 69); and "team correspondence" (*see, e.g., id.* at 71). Accordingly, the Court, in its discretion, has determined that a reduction to billed hours is appropriate in this case. *See, e.g.*, *Spence v. Ellis*, No. CV 07-5249 (TCP) (ARL), 2012 WL 7660124, at *7 (E.D.N.Y. Dec. 19, 2012) (reducing hours in attorneys' fees application because the "substantial amount of block billing in the fee requests here renders it difficult to determine whether, and/or the extent to which the work done by plaintiff's attorneys is duplicative or unnecessary"), *report and recommendation adopted*, No. 07-CV-5249 (TCP), 2013 WL 867533

---

[16] With respect to the remaining cases cited in plaintiff's supplemental letter, the Court concludes, based on its familiarity with this case and Section 1983

litigation generally, that a comparable fee award is not warranted in this action. *See Lore*, 670 F.3d at 175; *Gierlinger*, 160 F.3d at 876; *Carey,* 711 F.2d at 1146.

(E.D.N.Y. Mar. 7, 2013); *Molefi v. Oppenheimer Trust*, No. 03 CIV. 5631 (FB) (VVP), 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (applying 15 percent reduction for, *inter alia*, a "substantial amount" of block-billing); *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying 10 percent reduction based on counsel's "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined"); *Aiello v. Town of Brookhaven*, 94 CIV. 2622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (applying 10 percent reduction to billed hours because of attorneys' "substantial" use of block-billing).

In addition, Cleary Gottlieb's time entries indicate a substantial number of hours expended by new associates to the matter on familiarizing themselves with the background facts of the case. (*See, e.g.*, Hou Decl. Ex. B at 61, 66, 71.) Plaintiff is not entitled to fees for such duplicative efforts. *See General Elec.*, 1997 WL 397627, at *4 ("It is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of efforts increases."); *Gillberg*, 1996 WL 406682, at *5 ("Obviously, more lawyers leads to more 'conference' time as well as to a certain amount of repetition or 'learning curve' billing which should not be compensable." (footnote omitted)). The billing records also reflect that counsel's standard practice was to record their time in quarter-hour increments. Many phone calls and correspondence throughout the billing record are billed at a quarter of an hour, and it seems very unlikely that each phone call and e-mail exchange took fifteen minutes. Thus, the Court finds that a reduction is further warranted based on counsel's quarter-hour billing. *See, e.g.*, *Local No. 46 Metallic Lathers Union & Reinforcing Iron Workers Welfare Trust,*

*Annuity Fund, Pension Fund, Apprenticeship Fund, Vacation Funds, Scholarship Fund, & Other Funds v. Brookman Const. Co.*, No. 12-CV-2180 (ARR) (LB), 2013 WL 5304358, at *5 (E.D.N.Y. Sept. 19, 2013) ("Quarter-hour billing tends substantially to overstate the amount of time spent when many tasks require only a short time span to complete and adds an upward bias in virtually all cases." (citations omitted)).

Finally, that plaintiff's counsel decided to apportion an identical amount of time to the excessive force and the Due Process claims during the trial phase (*see* Pl.'s Br. at 16 n.12) demonstrates that Cleary Gottlieb did not adequately distinguish between work product on the two causes of action in its time entries. As a result, the unadjusted 1,034.61 Due Process trial hours may include work on the excessive force claim, fees for which, as discussed *supra* note 7, are capped at 150 percent of the jury award. Such possible conflation and the Court's inability to independently distinguish which trial phase hours pertain to the Due Process claim also necessitate a reduction in hours.

In light of these problems with Cleary Gottlieb's billing records, the overstaffing of this case, and the Court's experience with this and other Section 1983 actions, the Court concludes that a 50 percent across-the-board reduction in counsel's hours is warranted. *See, e.g.*, *Kirsch*, 148 F.3d at 173. The Court appreciates the dedication demonstrated by plaintiff's counsel; however, law "firms do not have the luxury to address every detail of a case *ad infinitum*" and then use a fee-shifting scheme to pass along the costs of those efforts to the losing party. *See Stevens*, 2016 WL 6652774, at *4.

\*\*\*

In sum, with respect to the Due Process claim against the County, the Court adopts the uncontested hourly rates submitted by

plaintiff—$400 for partner Victor L. Hou; $225 for senior and mid-level associates; and $175 for junior associates—but concludes that the number of hours expended is excessive and warrants an across-the-board percentage cut in order to trim the excess from counsel's billing entries. After applying that 50 percent cut, the Court calculates the lodestar to be $338,979.55 in attorneys' fees against the County. In addition, the Court awards $7,500 in attorneys' fees against Officer Cotter ($1.00 of which is to be exacted from the jury award), for a total fees award of $346,479.55.

## E. Costs

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennaccio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Here, plaintiff requests $81,781.93 in costs against Officer Cotter and $205,767.67 in costs against the County. Defendants argue that "[n]otwithstanding the extensive volume of records provided by [] plaintiff relating to costs, in many instances the records fail to sufficiently document the need for the costs that are reflected or, in other instances, the nature and purpose of the cost." (Defs.' Br. at 23.) With respect to the excessive force claim, they request an 80 percent reduction because plaintiff recovered damages against only one of the five corrections officers that he originally sued on that cause of action. (*Id*. at 24.) They also argue that the Due Process claim "costs should likewise be severely reduced . . . ." (*Id*.)

The Court agrees that reductions are appropriate. In its submission, plaintiff lists the following types of costs: (1) faxes; (2) fees for retrieving records; (3) printing and duplicating; (4) private investigator; (5) research; (6) scanning; (7) service of process; (8) shipping and postage; (9) transcripts; (10) travel (lodging); (11) travel (transportation); (12) shipping and postage; (13) transcripts; and (14) messengers. (Hou Decl. at 27-29.) The costs breakdown is as follows:

Phase I – Discovery on
Excessive Force Claim
(**Total**: $19,927.10)

Fax: $58.19
Retrieving Records: $873.27
Printing & Duplicating: $8,512.00
Private Investigator: $2,690.05
Research: $2,243.38
Scanning: $3,646.50
Service of Process: $333.95
Shipping & Postage: $456.98
Transcripts: $82.50
Travel (Lodging): $313.50
Travel (Transportation): $716.78

Phase II: Amended Complaint
(**Total**: $5,323.80)

Fax: $62.13
Printing & Duplicating: $870.20
Research: $4,014.30
Scanning: $152.10
Shipping & Postage: $225.07

Phase III: Discovery on
Due Process Claim
(**Total**: $29,062.59)

Fax: $36.51
Printing & Duplicating: $7,528.85
Research: $12,294.23
Scanning: $1,118.65
Shipping & Postage: $125.28
Transcripts: $7,959.07

Phase IV: Motions for
Summary Judgment
(**Total**: $28,555.49)

Printing & Duplicating: $3,809.40
Research: $24,453.42
Scanning: $108.55
Shipping & Postage: $184.12

Phase V: Trial
*Excessive Force Claim*
(**Total**: $61,854.83)

Retrieving Records: $165.40
Messengers: $45.00
Printing & Duplicating: $6,863.53
Research: $44,040.45
Scanning: $138.13
Shipping & Postage: $207.99
Transcripts: $180.61
Travel (Lodging): $9,510.12
Travel (Transportation): $703.60

*Due Process Claim*
(**Total**: $61,854.83)

Retrieving Records: $165.40
Messengers: $45.00
Printing & Duplicating: $6,863.53
Research: $44,040.45
Scanning: $138.13
Shipping & Postage: $207.99
Transcripts: $180.61
Travel (Lodging): $9,510.12
Travel (Transportation): $703.60

Phase VI: Post-Verdict
Motion for JMOL
(**Total**: $80,970.96)

Messengers: $75.00
Printing & Duplicating: $11,356.64
Research: $ 26,584.44
Scanning: $2.60
Shipping & Postage: $ 36.48
Transcripts: $42,915.80

As an initial matter, several of these categories are not compensable. An award of costs under Section 1983 is generally limited to "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs . . . and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987). To determine what type of expenses are reimbursable, courts generally look to 28 U.S.C. § 1920, *Kuzma*, 821 F.2d at 933, which enumerates the following taxable costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. In addition, Local Civil Rule 54.1(c) identifies ten categories of potentially taxable items: (1) transcripts; (2) depositions; (3) witness fees, mileage, and subsistence; (4) interpreting costs; (5) exemplifications and copies of papers; (6) maps, charts, models, photographs, and summaries; (7) attorneys' fees and related costs; (8) fees of masters, receivers, commissioners, and court appointed experts; (9) costs for title searches; and (10) docket and miscellaneous fees. Local Civ. R. 54.1(c).

Faxing and scanning are not covered under either 28 U.S.C. § 1920 or Local Civil Rule 54.1(c), and the Court deems such expenses to be non-compensable overhead. *See Kuzma*, 821 F.2d at 933-34. Accordingly, the Court will deduct $3,842.82 from the excessive force claim costs and $1,618.67 from the Due Process claim costs. In addition, Cleary Gottlieb's records indicate that it charges $0.20 per page for copies and duplication. (*See, e.g.*, Hou Decl. Ex. C at 2 (noting 0.2 rate for "NY DUPLICATING").) "Although photo-copying is an expense typically considered compensable, only a reasonable rate per page

may be awarded." *United States v. City of N.Y.*, No. 07-CV-2067 NGG RLM, 2013 WL 5542459, at *14 (E.D.N.Y. Aug. 30, 2013) (collecting cases). In *United States v. City of New York*, the court correctly found it "extremely skeptical that a reasonable client would pay twenty-five cents per page for photocopies, and [determined] ten cents per page to be appropriate." *Id.* (citing *Brady v. Wal–Mart Stores, Inc.*, 455 F. Supp. 2d 157, 216 (E.D.N.Y. 2006) (awarding photocopying costs at a rate of ten cents per page rather than twenty cents per page on the reasoning that the lower rate "is more consistent with a reasonable commercial rate"). For that reason alone, a 50 percent cut to photocopying costs is warranted. Further, plaintiff has not made "clear what documents were copied . . . and why the copies were necessary." *Robinson*, 2009 WL 3109846, at *11. In addition, for the reasons discussed *supra*, this Court finds that this matter was overstaffed and concludes that the considerable amount of money plaintiff's counsel spent on printing photocopying alone—$45,804.15—was due in part to generating copies of previously produced materials for the 10 attorneys who worked on this matter at various times. The Court does not find such expenditures to be "reasonable," *Pennacchio*, 2011 WL 2945825, at *2, and will, in its discretion apply an 80 percent cut to all printing and duplicating expenses, resulting in a $12,300.42 cut to the excessive force claim costs and $24,342.90 to the Due Process claim costs. *See, e.g.*, *Robinson*, 2009 WL 3109846, at *11. Similarly, the Court will also deduct 50 percent of the lodging expenses for the trial phase due to overstaffing, yielding a $4,755.06 reduction in cost as against each defendant.

In addition, plaintiff seeks reimbursement for legal research expenses. The Second Circuit has said that "the charges for . . . online research may properly be

included in a fee award." *Arbor Hill*, 369 F.3d at 98. "However, some courts decline to award electronic research costs, reasoning that the charges are already accounted for in the attorney's hourly rates." *City of N.Y.*, 2013 WL 5542459, at *12 (collecting cases). Here, plaintiff seeks a total of $152,905.29 in research costs, $26,584.44 of which is for the post-trial phase alone. These expenses are grossly excessive given the nature of the legal issues presented in this case. Moreover, the legal issues were largely static throughout the course of the litigation; for instance, there was significant overlap between the cross-motions for summary judgment and defendants' post-trial motion for judgment notwithstanding the verdict. Because such an award is discretionary, the Court finds "it more appropriate in this case to award the costs with . . . reductions." *Id.* at *13; *see also ACE Ltd.*, 2001 WL 1286247 at *7 (applying 50 percent reduction to requested $16,459.48 in computer research charges because "Skadden Arps' junior associate engaged in egregiously excessive amounts of research"); *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (Chin, J.) (counsel at Milbank, Tweed, Hadley & McCloy LLP sought approximately $58,000 in Section 1983 action, but the court found that the "requested costs, particularly office expenses and electronic legal research costs, [were] excessive" and awarded $25,000). *Cf. Robinson*, 2009 WL 3109846, at *11 (awarding $7,595.24 in Westlaw charges). At a minimum, a 50 percent reduction would be warranted given the corresponding reduction in attorney hours, *see ACE Ltd.*, 2001 WL 1286247 at *7, but given the substantial fees award, the Court finds that an 80 percent cut is appropriate. As a result, the Court reduces the excessive force claim costs

by $37,027.06 and the Due Process claim costs by $85,297.17.

Finally, plaintiff seeks reimbursement for $42,915.80 in transcript costs pertaining to the post-trial phase. That extraordinary sum is largely the result of Cleary Gottlieb's decision to pay for eight separate real-time transcript feeds during the trial, an extravagant expense—to put it mildly—that should not be passed on to the County. *See Husain*, 579 F. App'x at 6; *ACE Ltd.*, 2001 WL 1286247, at *4. The Court finds that ordering daily transcripts would have been more than sufficient, *see Perks v. Town of Huntington*, 331 F. App'x 769, 770 (2d Cir. 2009), and E.D.N.Y. Administrative Order 2008-01 sets a per page rate of $6.66 for daily transcripts. The trial transcript is 1,411 pages long, yielding a total cost of $9,397.26. The Court has reviewed the other expenditures claimed by plaintiff and finds them to be adequately documented and itemized.[17]

In sum, the Court will cut $57,925.36 from plaintiff's request for costs against Officer Cotter, generating a total of $23,856.57; and $149,532.34 from plaintiff's request for costs against the County, generating a total of $56,235.33

### III. CONCLUSION

For the foregoing reasons, the Court awards plaintiff $7,500 in attorneys' fees against Officer Cotter ($1.00 of which is to be satisfied from the jury award) and $338,979.55 in attorneys' fees against the County, for a total of $346,479.55. The Court further awards plaintiff $23,856.57 in costs against Officer Cotter and $56,235.33 in

---

[17] For the reasons discussed above, the Court rejects defendants' unsupported assertion that it should deduct 80 percent of the excessive force claim costs due to plaintiff's voluntarily withdrawn claims against

Officers Gubitosi, Reynolds, and Thomas and his unsuccessful claim against Officer Weiss. *See supra* page 5 and note 5.

costs against the County, for a total of $80,091.90.[18]

Pursuant to plaintiff's unopposed request (*see* Pl.'s Reply Br. at 1 n.1), the Clerk of the Court, following entry of judgment, is directed to calculate any post-judgment interest on the fees and costs awards in accordance with 28 U.S.C. § 1961(a).

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated:    February 14, 2017
          Central Islip, NY

* * *

Plaintiff is represented by Victor L. Hou and Diarra M. Guthrie of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006. Defendants are represented by Brian C. Mitchell, Suffolk County Attorney's Office, 100 Veterans Memorial Highway, Hauppauge, New York 11788.

---

[18] Accordingly, the Court rejects defendants' argument that the total award of fees and costs should not exceed $50,000.